## SUCCESSION OF GEORGE.

The curator of a vacant succession cannot claim that the succession be completely administered before surrendering possession to the heirs, nor require security from the heirs for amounts due to the creditors before delivering possession to them, but he may require the previous homologation of his accounts, and the allowance of all credits to which he is entitled for commissions and disbursements in the administration, and the homologation of a statement of the debts due by the succession, where the heirs or legatees are not domiciled in this State and are not citizens of any State in the Union, for the purpose of ascertaining the amount of the tax due to the State under sec. 4 of the stat. of 26 March, 1842, which amount he is bound to retain from the heirs and pay to the State, under the penalty of his personal responsibility.

APPEAL from the District Court of St. Tammany, *Penn*, J. *Halsey*, for the heirs, appellants. *J. R. Jones*, for the absent heir. *Whitaker*, for the curator. The judgment of the court was pronounced by

SLIDELL, J. The estate of the deceased being vacant, a curator was appointed. Subsequently the heirs, who are not domiciled in this State, and who, with one exception perhaps, are subjects of a foreign country, applied by their attornies in fact to be put into possession of the estate. The court rendered a decree recognizing them as heirs, ordering the curator to render his account contradictorily with said heirs, and, after payment of all the debts and legal charges established against said succession, to pay over and deliver to said heirs, in equal portions, the balance of the funds and property belonging to the succession. Soon afterwards the curator filed his account stating the names of several creditors, whose debts had been acknowledged. Among them the State of Louisiana is noticed as a creditor, in an amount unascertained, for the tax on successions established by the act of 1842. From this decree the heirs have appealed. They contend that no authority is conferred on a curator to claim a complete administration before surrendering possession to the heirs; and that he cannot interfere on behalf of the creditors, and claim security from the heirs. They cite, in support of this position, the Code, arts. 1180, 1182; C. P. 1000, 1007; the case of *Fisk's Succession*, 3 Ann. 705; and *Graves* v. *Routh*, ante p. . Acts of 1828, p. 156.

By the 4th section of the act of 26th March, 1842, it was enacted: "That each and every person not domiciliated in this State, and not being a citizen of any State or Territory in the Union, who shall be entitled whether as heir, legatee or donee, to the whole or any part of the succession of a person deceased, whether such person shall have died in this State or elsewhere, shall pay a tax of ten per cent on all sums, or on the value of all property, which he may actually receive from said succession, or so much thereof as is situated in this State, after deducting debts due by said succession. When the said inheritance, dona-

tion, or legacy consists of specific property, and the same has not been sold, the appraisement thereof in this inventory shall be considered as the value thereof. Every executor, curator, tutor, or administrator, having the charge or administration of succession property belonging, in whole or in part, to a person residing out of this State, and not being a citizen of any other State or Territory, shall be bound to retain in his hands the amount of the tax imposed by this act, and to pay over the same to the State treasurer, if the succession be opened in the parish of Orleans or Jefferson, or to the sheriff, if the succession. be opened in any other parish; in default whereof every such executor, curator, tutor or administrator, and his securities, shall be liable for the amount thereof."

It is obvious that all the provisions of our Code and statutes relating to successions must be so construed, if possible, as to give them all effect. While it is our duty to enforce the rights of the heirs, it is equally so to protect the curator from personal loss in the administration of his trust, and the public treasury from the risk of an abstraction of that portion of the fund to which it is entitled.

It is evident then that, so much of the decree as directs the previous rendition of an account, was correct. The curator had a right, as against the heirs, to the recognition of all lawful credits in his favor, for his commissions, his disbursements in the administration of his trust, and any payment of debts lawfully due by the deceased. To this end the exhibition and homologation of an account was indispensable.

He had also a right to insist upon the exhibition and homologation of a statement of the debts due by the succession, for the purpose of ascertaining the amount falling to the State under the act of 1842, which amount, thus ascertained by him, was to be withheld from the heirs, and paid over by him to the State, under the penalty of his personal responsibility. The heirs might, perhaps, have removed this difficulty, by tendering ten per cent according to the inventory, but they did not do so, and evidently it was not their interest to do so. On the other hand, the curator was not entitled to withhold from the heirs the amounts due to other creditors, who had not chosen to exercise the right of exacting security, which the law gives them.

The only error, therefore, in this portion of the decree is, in directing the curator to retain what may be due to creditors other than the State.

The attorney appointed to represent the absent heirs suggests that there is error in the decree, in omitting to include *Margaret George*, a sister of the deceased, as one of the heirs; in giving the mother of the deceased only an equal share with the brothers and sisters, instead of one-fourth of the succession, and in treating the husbands of two of the sisters as heirs. The decree is clearly erroneous in this respect.

It is therefore decreed that, the judgment of the court below be reversed; and it is further decreed that, *Ann George*, the mother of *Alexander George*, deceased—*Connolly George*, the brother of the said deceased—*Rose Ann George*, wife of *John Steen*—*Mary Ann George*, wife of *Thomas Coun*—*Nancy George*, wife of *James Gilmour*—*Margaret George*, wife of *William Miller*—the said *Rose Ann, Mary Ann, Nancy*, and *Margaret*, being sisters of the deceased, be recognized as the legal heirs of the deceased, and be entitled to share in and receive the succession of said deceased after the proceedings hereby directed, in the proportion of one-fourth to the said *Ann George* the mother, and one-fifth of three-fourths to each of the said *Connolly, Rose Ann, Mary Ann, Nancy* and *Margaret*; that the account rendered by said curator be acted upon contradictorily

with said heirs, and, after due notice conformably to law; and that after the payment of the lawful charges incurred in the administration of said estate, the reservation of the tax coming to the State, and the allowance to said curator of all lawful credits, the residue of said succession be delivered to and distributed among said heirs in the proportion above adjudged, saving to the creditors of said deceased their right to intervene for the protection of their rights, before the final decree of homologation of said account; the costs of this appeal to be paid by the estate.